IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW HAMPSHIRE

| | |
|---|---|
| UNITED STATES OF AMERICA | ] |
| | ] |
| v. | ]   No. 22-CR-46-SE |
| | ] |
| NAFIS QUAYE | ] |
| SUNNA SEPETU | ] |
| STELLA OSABUTEY | ] |
| SAMUEL ANSAH | ] |

**MOTION TO SEVER CODEFENDANTS' TRIALS**

NOW COMES the defendant, Nafis Quaye, by and through his counsel, Eric Wolpin and Behzad Mirhashem, and respectfully moves this Honorable Court to sever his upcoming trial from those of his codefendants, Sunna Sepetu and Stella Osabutey, pursuant to Federal Rule of Criminal Procedure 14 and the Fifth and Sixth Amendment to the United States Constitution.

Procedural Background

The Government brought an indictment alleging that Samuel Ansah committed wire fraud (Counts One through Five) and that Samuel Ansah, Nafis Quaye, Stella Osabutey, and Sunna Sepetu conspired to commit money laundering by conducting financial transactions with the wire fraud proceeds (Count Six). ECF Doc. 1. Mr. Ansah has not been apprehended. The remaining three codefendants, including Mr. Quaye, were arrested in 2022. Nafis Quaye, Stella Osabutey, and Sunna Sepetu are presently scheduled for a joint trial in March 2024.

1

On January 2, 2024, Mr. Quaye filed a notice of a potential request for severance ahead of a scheduled January trial date. ECF Doc. 46 The notice did not request relief or formally request severance. *Id.* On January 5, 2024, all counsel in the case had a telephone conference to discuss case scheduling. On January 8, 2024, the Court held a conference with all counsel present to address Mr. Quaye's severance notice and trial scheduling. The trial was thereafter continued to March 2024. The parties proposed revised deadlines setting severance-related notices and motion deadlines significantly ahead of the new trial date. ECF Doc. 47. The Court adopted the parties proposed deadlines. ECF Doc. 48.

The Court's deadlines required the "Government to identify any statements of any defendant expected to be introduced at trial" by January 19, 2024. *Id.* The Government met this deadline and, on January 19, 2024, notified the Defense which statements it intended to use at trial. The defendants have a deadline of February 2, 2024, to file a motion to sever. This motion to sever follows.

Legal Argument

**I. Consolidation of trials appears to prejudice Mr. Quaye as there is a significant risk that codefendants will pursue antagonistic defenses.**

Fed. R. Crim. P. 14(a) provides that "if the joinder of . . . defendants in an indictment . . . or a consolidation for trial appears to prejudice a defendant or the government, the court may . . . sever the defendants' trials, or provide any other relief that justice requires."

A defendant may face several forms of prejudice due to improper joinder, including the prejudicial "spillover" of evidence in a joint trial, the unavailability of a codefendant to testify at a joint trial, and the prejudice that follows from one or more codefendants running an antagonistic defense at a joint trial. *United States v. Drougas*, 748 F.2d 8, 18-22 (1st Cir. 1984). Here, the potential prejudice arises from the existence of antagonistic defenses.

That codefendants are pursuing opposing defenses does "not *per se* require severance," but "requires severance only where the defenses are so inconsistent that the jury would not believe one defendant at the expense of the other; the conflict alone establishes the guilt of a defendant." *Id.* at 19-20. *See also United States v. Pérez-Vásquez*, 6 F.4th 180, 201 (1st Cir. 2021) ("[T]o gain a severance based on antagonistic defenses, the antagonism . . . must be such that if the jury believes one defendant, it is compelled to convict the other defendant." *United States v. Floyd*, 740 F.3d 22, 36 (1st Cir. 2014) (second alteration in original) (quoting *United States v. Pena-Lora*, 225 F.3d 17, 33 (1st Cir. 2000)).").

Mr. Quaye's defense will focus on his *mens rea*. Mr. Quaye's codefendants spoke to law enforcement during the investigation, but neither gave what would be considered a "full" statement of their knowledge or involvement. Neither codefendant gave a recorded interview; their statements are memorialized in law enforcement reports rather than in a recording. Mr. Quaye's codefendants may avail themselves of the opportunity to testify. Should one or both codefendants testify that Mr. Quaye knew of the underlying wrongdoing (*i.e.,* Mr. Ansah's alleged scheme to commit wire

3

fraud) and that testimony were to be believed, the jury likely would be compelled to convict Mr. Quaye. That is the exact prejudice that severance seeks to prevent.

The potential prejudice raised in Mr. Quaye's notice remains. Since its filing, counsel for the parties have conferred together and had an informal hearing with the Court addressing, among other things, the severance notice. Mr. Quaye's concerns might have been allayed if counsel for his codefendants had indicated that they were not intending to run an antagonistic defense during these conferences. However, consistent with their rights to confidentiality and attorney-client privilege, Mr. Quaye's codefendants are under no obligation to reveal their trial plans to Mr. Quaye's Counsel and have not done so. With that being the case, the prospect remains that the need for severance will arise mid-trial, after Mr. Quaye's deadline for filing a motion to sever and potentially at the cost of completing the trial. For that reason, a motion to sever is ripe and should be granted.

**II.   Consolidation of trials appears to prejudice Mr. Quaye as there are incriminating statements by his codefendants that would be admissible against his codefendants but not Mr. Quaye.**

In addition to the possibility of antagonistic defenses, the Government's notice identified its intent to admit statements that cross-implicate codefendants at trial. *Government's Notice of Intent to Use Statements of Co-defendants,* Jan 19, 2024. For example, the notice identifies statements by Ms. Sepetu in which she disavowed knowledge about "sales volume and profits" for a business alleged to have received the wire fraud's proceeds and identified Mr. Quaye as "the person with more

knowledge about the business, [as he] is the person who sets up the sales, and knows the purchasers." *Id.* at 2. Ms. Sepetu's statements incriminate Mr. Quaye as she implicates his knowledge of the inner-workings of a business that the government is alleging was primarily a tool for money laundering.

The United States Supreme Court has dealt with the admissibility and impact of incriminating pre-trial statements by codefendants for decades, beginning most notably with *Bruton v. United States*, 391 U.S. 123 (1968). The crux of the conundrum is that declarant's out-of-court statement is competent evidence against him or her, Fed. R. Evid. 801(d)(2), but inadmissible per hearsay rules and the Sixth Amendment's Confrontation Clause with respect to his or her codefendants. *Id.* The non-declarant codefendants' constitutionally guaranteed rights to confrontation are violated by the admission of an out-of-court, testimonial[1] statement not subject to cross examination. *See Id.* at 126 ("confirm[ing] that the right of cross-examination is included in the right of an accused in a criminal case to confront the witnesses against him secured by the Sixth Amendment; a major reason underlying the constitutional confrontation rule is to give a defendant charged with crime an opportunity to cross-examine the witnesses against him.") (citations and quotation marks omitted).

---

[1] Counsel uses the word testimonial above, as that is the current framework for a Confrontation Clause analysis. The "testimonial" framework, however, did not come about until after *Bruton* in *Crawford v. Washington*, 541 U.S. 36 (2004). *Id.* at 68 ("Where **testimonial** evidence is at issue, however, the Sixth Amendment demands what the common law required: unavailability and a prior opportunity for cross-examination.") (emphasis added). Statements at issue here are responses to law enforcement questioning and are thus within the core understanding of testimonial statements under the Confrontation Clause. *See Id.* at 52 ("Statements taken by police officers in the course of interrogations are also testimonial under even a narrow standard.").

The Court in *Bruton* recognized the "prejudice" of joinder under these circumstances and held that a judicial instruction that the jury could use the evidence against one defendant, but not the other, was insufficient to cure the prejudice. *Id.* at 137 ("Despite the concededly clear instructions to the jury to disregard Evans' inadmissible hearsay evidence inculpating petitioner, in the context of a joint trial we cannot accept limiting instructions as an adequate substitute for petitioner's constitutional right of cross-examination. The effect is the same as if there had been no instruction at all.").

Subsequent to *Bruton*, the Court has been repeatedly asked to review redactions and exclusions within admitted statements to determine what obfuscations of a codefendant's identity avert a confrontation clause violation. *Compare Gray v. Maryland*, 523 U.S. 185, 192 (1998) ("We therefore must decide a question that *Richardson* left open, namely whether redaction that replaces a defendant's name with an obvious indication of deletion, such as a blank space, the word "deleted," or a similar symbol, still falls within *Bruton*'s protective rule. We hold that it does.") *with  Samia v. United States*, 143 S. Ct. 2004, 2011 (2003) (holding that "the [Confrontation] Clause was not violated by the admission of a nontestifying codefendant's confession" where, in its presentation to the jury, the codefendant was referred to as an "other person" rather than by name, and its admission "was subject to a proper limiting instruction.").

The Supreme Court has determined that statement alterations and jury instructions can prevent a Confrontation Clause violation. Although this is true as a

6

constitutional principle, the severance analysis flows from federal rule rather than the Confrontation Clause. Per Fed. R. Crim. P. 14(a), severance is warranted where joinder "appears to **prejudice** a defendant." (emphasis added) The rule could have been alternatively crafted to require severance where joinder "appears to result in a constitutional violation;" it was not.

Thus, in evaluating this request, the Court is required to consider whether joinder "appears to prejudice" Mr. Quaye. It does. The admission of Ms. Sepetu's statement described above, even with redaction and an instruction, prejudices the defendant. *See e.g. Samia v. United States*, 143 S. Ct. at 2020 (Kagan, J., dissenting) ("The redacted confession thus presents the same risk as the unredacted one—that the jury will consider it as evidence against Mary even if instructed not to."); *Gray*, 523 U. S., at 192 (stating that co-defendant confessions are "so prejudicial that limiting instructions cannot work"); *Richardson v. Marsh*, 481 U. S. 200, 208 (1987) (noting "the overwhelming probability of [jurors'] inability" to follow instructions to disregard co-defendant confessions).

Counsel contacted the attorney for the Government, AUSA C. Rombeau. The Government will take a position upon review of this motion. Counsel contacted the attorney for Ms. Sepetu, J. Newman, who similarly will take a position upon review of the motion. Counsel contacted the attorney for Ms. Osabutey, C. Keefe, who takes no position on the motion.

WHEREFORE, Nafis Quaye, by and through his counsel, respectfully moves this Honorable Court to sever his upcoming trial from those of his codefendants, Sunna Sepetu and Stella Osabutey.

Date: February 2, 2024

Respectfully submitted,
NAFIS QUAYE
By His Attorney,

/s/ Eric Wolpin
Eric Wolpin
N.H. Bar No. 18372
E-mail: Eric_Wolpin@fd.org

/s/ Behzad Mirhashem
Behzad Mirhashem
N.H. Bar No. 10031
Assistant Federal Defender
22 Bridge Street, 3rd floor
Concord, NH 03301
Tel. (603) 226-7360
E-mail: Behzad_Mirhashem@fd.org