UNITED STATES DISTRICT COURT
DISTRICT OF NEW HAMPSHIRE

| | |
|---|---|
| UNITED STATES OF AMERICA | ) |
| | ) |
| v. | ) |
| | )   No. 22-cr-46-SE |
| SUNNA SEPETU, et al. | ) |
| | ) |

UNITED STATES' OBJECTION TO DEFENDANT QUAYE'S MOTION TO SEVER

I.   INTRODUCTION.

Defendants Nafis Quaye, Sunna Sepetu and Stella Osabutey are charged with conspiring to launder wire fraud proceeds obtained by Defendant Sanuel Ansah and others through shell companies under their control.  The government alleges that these companies received victim fraud proceeds that in many cases were then transferred to other companies or entities, often in Africa, concealing the destination of the funds from the victims.  Quaye, Sepetu and Osabutey are charged in one indictment alleging a single conspiracy count against them.  See Fed. R. Crim. P. 8(b).  Defendant Quaye has now moved to server his trial from Defendants Sepetu and Osabutey.[1]  See Fed. Crim. P. 14(a).

Quaye offers two grounds for severance. First, he asserts that severance is required because one or both of the co-defendants may offer a defense that is antagonistic to his lack of "mens rea" defense.  Second, he says that the Court should order severance to avoid a Bruton problem based on the government's representation that it may introduce a statement by Sepetu to law enforcement that Quaye is the one with "knowledge about the business" [because] he is the "one who sets up the sales and knows the purchasers."

---

[1] Of note, defendants Sepetu and Osabutey have both indicated they take no position on the motion to sever.  Dkt. Nos. 53, 54.

1

Neither ground provides a basis for severance. Other than Quaye's unsupported supposition that one of the co-defendants will testify and point the finger at him, there is no evidence of antagonistic defenses. There is no inherent antagonism between Quaye's defense that he did not have the "mens rea" for the crime and a defense by the co-defendants that they were only tangentially involved in the businesses at issue and therefore not involved in the suspect transactions. Moreover, the statement highlighted by Quaye does not trigger <u>Bruton</u>. The statement is not on its face incriminating and can be modified to remove any mention of Quaye. That step, combined with a limiting instruction informing the jury that Sepetu's statement cannot be considered against Quaye, would alleviate any potential prejudice that would justify severance. The motion to sever should be denied.

II. THERE IS NO BASIS FOR SEVERANCE ON THE GROUND OF POTENTIALLY ANTAGNOSTIC DEFENSES.

Where, as here, the defendants are charged with conspiracy "severance is especially disfavored because joint trials promote efficiency" and "help to avoid inconsistent verdicts." <u>United States v. Tiem Trinh</u>, 665 F.3d 1, 17 (1st Cir. 2011). This Court should grant severance only if there is "a serious risk that a joint trial would compromise a specific trial right of one of the defendants or prevent the jury from making a reliable judgment about guilt or innocence." <u>United States v. Celestin</u>, 612 F.3d 14, 19 (1st Cir. 2010).

"In order to gain a severance based on antagonistic defenses, the defenses must be such that if the jury believes one defendant, it is *compelled* to convict the other defendant." <u>United States v. Pena-Lora</u>, 225 F.3d 17, 33 (1st Cir. 2000). Otherwise stated, "the tension between defenses must be so great that a jury would have to believe one defendant at the expense of the other." <u>United States v. Floyd</u>, 740 F.3d 22, 36 (1st Cir. 2014). For this reason, "defenses are not antagonistic merely because they are not congruent." <u>Id.</u>

2

At this point, the most that the evidence shows is that Quaye and Sepetu may offer defenses that are not congruent. According to his motion, Quaye intends to offer a defense that will "focus on his mens rea." In other words, Quaye presumably will argue that, while he was involved in running the business at issue, he did not know that he was receiving revenue from fraud proceeds and therefore did not know that he was participating in money laundering transactions by receiving and sending the funds. Thus, while Quaye apparently won't deny substantial involvement in the businesses or that the transactions occurred, he will contend that the government cannot prove he knew that he was laundering funds. Based on Sepetu's statements to law enforcement, Sepetu likely will offer a defense in which she distances herself from involvement in the business generally and the suspect transactions specifically. To that end, she made several statements that she could not identify customers, could not estimate sales volume or profits, and that she is only learning the business but does not know it to be involved in illegal activity.

Quaye's and Sepetu's apparent defenses do not present a situation in which the jury would be compelled to convict one if it acquits the other. Based on these arguments, the jury could acquit them both. It could conclude that Sepetu was a bit player in the business and therefore did not know that she was involved in a money laundering scheme. It could also conclude that, while Quaye was more involved in managing the business and even receiving the funds, he did not know that the funds were derived from fraud, and therefore he was not guilty of money laundering. Accordingly, there is no present basis to conclude that the defendants will offer mutually antagonistic defenses.

Quaye says nevertheless that it is possible that one of his co-defendants will take the stand and accuse him of having knowledge of the underlying fraud. That is possible (although

3

there is nothing now but speculation to support it) but it makes no difference. Every defendant wanting severance could make such a claim. But, as discussed above, severance is strongly disfavored, especially in a conspiracy case such as this. Thus, fear of the unknown cannot be enough to obtain a severance since virtually every defendant could raise that fear as a successful basis for severance. If a co-defendant, in fact, testifies, the Court would have to evaluate that testimony to decide if it is directly antagonistic based on the high standard recited earlier. But as the record stands now, there is no basis for this Court to conclude that the Quaye and his co-defendants will offer mutually antagonistic defenses. Thus, this ground for severance fails.

III.     THERE IS NO BASIS FOR SEVERANCE
         ON THE GROUNDS OF SEPETU'S STATEMENT.

Quaye's second basis for severance is the government's filing in which it identified certain statements from Sepetu which it may introduce at trial. In a couple of those statements, Sepetu suggests that Quaye knew more about the business that she did. In support of his argument for severance based on these statements, Quaye relies heavily on Bruton and its progeny. But Bruton does not apply here because Sepetu's statements are not facially incriminatory; the statements can be generalized to remove a direct reference to Quaye; and the Court can provide a limiting instruction telling the jury that the statements are only evidence against Sepetu.

As the United States Supreme Court recently recognized, generally the Sixth Amendment Confrontation Clause is not violated by the introduction of a co-defendant's statement so long as the jury is instructed to consider the statement only against the co-defendant. Samia v. United States, 599 U.S. 635, 644 (2023). Bruton is a narrow exception to this general rule.

Bruton held that an instruction telling the jury to apply a co-defendant statement only to the co-defendant is an inadequate protection for the defendant, under the Confrontation Clause,

4

where the non-testifying co-defendant's statement is facially incriminating toward the defendant. For Bruton's rule to apply, the co-defendant's statement must be directly accusatory. Gray v. Maryland, 523 U.S. 185, 194 (1998). "Statements that are incriminating only when linked to other evidence in the case" do not trigger the Bruton rule as a reason for granting a severance. United States v. Bucci, 525 F.3d 116, 127 (1st Cir. 2008).

Here, the statements are not facially incriminating. Sepetu's assertion that Quaye was more involved in the business than she is not an accusation that Quaye was committing money laundering. That connection, if it is to be made, will have to come from other evidence that suggests Quaye's knowledge about the source of funds. Moreover, the statements by Sepetu to law enforcement highlighted by Quaye were not recorded. Therefore, the Court could instruct the testifying agent not to mention Quaye's name when describing the statements by Sepetu about her limited involvement. Finally, the Court could (and should) instruct the jury that Sepetu's statements can only be used against her and cannot be considered as evidence against Quaye. As Samia makes clear, these steps are sufficient to protect Quaye's rights. Therefore, the statements do not serve as the basis for a severance.

Perhaps sensing this legal reality, Quaye shifts focus toward the end of his motion from a Confrontation-Clause problem to a generalized claim of prejudice. But Quaye does not explain the nature of that prejudice. Again, as Samia explains, there is a long history of a codefendant's statements being admitted in the defendant's trial coincident with a limiting instruction on how the statement could be used. If the Court followed that approach here, Quaye would not suffer prejudice. Accordingly, this basis for severance fails too.

IV.     CONCLUSION.

For the reasons stated, based on the present record, the Court should deny the defendant's motion for a severance from the other defendants.

                                            JANE E. YOUNG
                                            UNITED STATES ATTORNEY

By: /s/ Charles L. Rombeau
     Charles L. Rombeau
     Assistant United States Attorney
     53 Pleasant Street, 4th Floor
     Concord, NH 03301
     (603) 225-1552
     charles.rombeau@usdoj.gov